COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Beales
Argued at Salem, Virginia


RONALD E. COLEMAN
                                                              OPINION BY
v.      Record No. 2863-06-3            JUDGE RANDOLPH A. BEALES
                                                        FEBRUARY 26, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                                James V. Lane, Judge

            W. Andrew Harding (Eldridge, Elledge & Harding, PLC, on brief),
            for appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Ronald E. Coleman (appellant) pled guilty to two counts of robbery, one count of use of a

firearm in the commission of a robbery, and three misdemeanor counts of assault and battery.

Prior to sentencing, he filed a motion asking to withdraw the guilty pleas, which the trial court

denied.  Appellant argues on appeal that the trial court erred in denying his motion.  Upon review

of the record, we affirm the trial court and remand only for correction of a clerical error in the

final sentencing order.[1]  See Code § 8.01-428(B).

--------

[1] Appellant pled guilty to use of a firearm in the commission of a robbery under Code
§ 18.2-53.1.  In the final order, although the correct indictment number and code section are
listed, the crime is described as "Possess a firearm after having been convicted of a felony."
Appellant was initially indicted for possessing a firearm after having been convicted of a felony,
as well as use of a firearm in the commission of a robbery, but the possession charge was
dismissed pursuant to the plea agreement.  The transcript of the sentencing hearing clearly shows
that the trial court intended to sentence appellant to the three-year mandatory minimum sentence
required under Code § 18.2-53.1.  Therefore, we remand this case to the trial court for correction
of the final order to reflect the proper description of the crime charged in Indictment CR32363.

BACKGROUND

Appellant originally was charged with two counts of abduction, one count of use of a firearm in the commission of a felony, one count of possession of a firearm by a felon, two counts of robbery, and three counts of misdemeanor assault and battery – all crimes related to the robbery of a Goodwill store in Harrisonburg.

According to the facts proffered by the Commonwealth, on May 11, 2005, appellant rang the bell at the back door of the Goodwill store. When one of the employees, Mary Whetzel, answered, he pushed the door open and "stuck a gun" in her face. He struck Ms. Whetzel, threatened her, and forced her into a closet with another employee. He then threatened a third employee with the gun, telling her to take him to the office. Two more employees, Deborah Siever-Salas and Megan Shaver, were in the office. Appellant took the money that Ms. Siever-Salas was counting and also took money from Ms. Shaver. All these witnesses recognized appellant, who had worked in the store at one time. He was a convicted felon at the time of the robbery.

Appellant entered an Alford[2] plea to all the charges, which the trial court accepted after questioning him about its voluntariness. Prior to sentencing, however, appellant asked to withdraw his Alford plea. The trial court granted this motion.

Appellant then filed a motion to suppress the witness identifications.[3] The trial court held a hearing at which the store's employees testified about the robbery and their identification of appellant. All of the witnesses positively identified appellant as the person who robbed the store.

---

[2] North Carolina v. Alford, 400 U.S. 25 (1970).

[3] Appellant also filed a separate motion to suppress evidence collected from his home, which is not relevant to our consideration of this appeal.

The trial court denied appellant's suppression motion and set the case for a jury trial on September 21, 2006.

On September 13, 2006, appellant and the prosecutor filed a "written agreed disposition" with the court. Pursuant to that agreement, appellant entered guilty pleas to the charges herein appealed, and the remaining charges were nolle prossed. After a colloquy about the voluntariness of appellant's plea, his understanding of the plea agreement, and his agreement with the proffer of evidence, the court accepted appellant's new plea and set the matter over for sentencing on October 26, 2006.

A few days prior to his October sentencing date, appellant filed a motion to withdraw his guilty pleas. In his handwritten letter to the court, appellant said that he had "been confused through this whole process. I also feel I was pressured to make this plea to prevent a life sentence, so what I'm saying is I didn't plea [sic] out of guilt, I plead [sic] out of fear."

The court held a hearing on appellant's motion. Appellant testified that he "was just stressed out" and "not thinking right" when he pled guilty. Appellant explained, "[A]ll I was thinking was life [in prison], so I really didn't think straight as far as my defense and my innocence because I'm thinking about trying to duck this life [sentence]." He claimed he might be "going crazy." Appellant also said he wanted to prove his innocence, but he did not present any affidavits or other evidence to support any defense he might have had to the crimes.

The trial court denied appellant's motion, explaining:

> [T]here is no evidence whatsoever of coercion, of not fully
> understanding the charges, of not fully being aware of the evidence
> against you, and no basis whatsoever under Jones or any of the
> case law. You have a centilla [sic] of a defense based on the
> evidence that I've heard, and obviously I haven't heard your
> evidence, but you have no more of a centilla [sic] of an argument
> of mistaken identity, things such as that. And the evidence is
> frankly rather overwhelming from eyewitnesses in the case. We
> have no bases under any of the case law to set aside your pleas and

- 3 -

allow you to withdraw them. Therefore, your motion is overruled
and the finding of guilt on these offenses will stand.

Appellant then appealed to this Court.

ANALYSIS

Code § 19.2-296 states:

> A motion to withdraw a plea of guilty or nolo contendere may be
> made only before sentence is imposed or imposition of a sentence
> is suspended; but to correct manifest injustice, the court within
> twenty-one days after entry of a final order may set aside the
> judgment of conviction and permit the defendant to withdraw his
> plea.

However, a trial court is not required to automatically grant any request to withdraw a plea when

the request is made prior to sentencing. Instead, the decision to allow a defendant to withdraw

his guilty plea rests "within the sound discretion of the trial court and is to be determined by the

facts and circumstances of each case." Parris v. Commonwealth, 189 Va. 321, 324, 52 S.E.2d

872, 873 (1949). This Court has noted previously that "we should reverse only upon 'clear

evidence that [the decision] was not judicially sound . . . .'" Jefferson v. Commonwealth, 27

Va. App. 477, 488, 500 S.E.2d 219, 225 (1998) (quoting Nat'l Linen Serv. v. Parker, 21

Va. App. 8, 19, 461 S.E.2d 404, 410 (1995) (brackets in original)).

The Supreme Court recently discussed motions to withdraw guilty pleas in Justus v.

Commonwealth, 274 Va. 143, 645 S.E.2d 284 (2007). Justus pled guilty to breaking and

entering and to malicious wounding, but then asked to withdraw her pleas pursuant to Code

§ 19.2-296. Id. at 148-49, 645 S.E.2d at 285-86. In support of her motion, she presented to the

trial court affidavits avowing that she lived in the house that she allegedly burgled and that she

acted in self-defense after being assaulted upon entering her home. Both of these allegations, if

true, were absolute defenses to the crimes with which Justus was charged. The trial court denied

her motion.

- 4 -

The Supreme Court remanded the case for trial, explaining:

> Upon review of the record, we are of opinion that, under the circumstances of this case, the ends of justice would be served in permitting Justus to withdraw her guilty pleas and plead not guilty to the charges against her. The record supports the conclusion that her motion to withdraw her guilty pleas was made in good faith and premised upon a reasonable basis for substantive, and not "merely dilatory or formal," defenses to the charges. Accordingly, we hold that the circuit court abused its discretion in not granting the motion and permitting Justus to withdraw her guilty pleas.

Id. at 155-56, 645 S.E.2d at 290. In reaching this conclusion, the Supreme Court relied on the following language from Parris:

> "As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances. Generally, however, it may be said that the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury."

Parris, 189 Va. at 325, 52 S.E.2d at 874 (quoting 14 Am. Jur. Criminal Law § 287 (1938)).

Here, neither appellant's argument nor the facts suggest that the trial court erred. Appellant does not argue that he made a mistake of fact, as the defendant did in Parris, or that he had an affirmative defense, as the defendant had in Justus. Instead, he argues that the possibility of life sentences pressured him into pleading guilty. He argues that the language in Parris, that courts should permit withdrawals if the plea was entered with "the least surprise or influence" or "fear, fraud, or official misrepresentation," required the trial court to grant his motion. However,

appellant takes this language out of context, and he also ignores stark contrasts between the facts of his particular case and the very different facts present in Justus and in Parris.

Obviously, every guilty plea is the product of some influence on a defendant. Every defendant faces the fear of sentencing. Each defendant considers the "pros" and "cons" of his or her plea and makes a decision based on the factors, or "influences," that are important to that person. Therefore, "the least influence" and "fear" cannot include fear of sentencing alone. Otherwise, courts would always have to grant motions to withdraw guilty pleas. Such a result would run contrary to the historic discretion of trial courts discussed by the Supreme Court in Parris. 189 Va. at 324, 52 S.E.2d at 873. As the United States Supreme Court explained in a slightly different context:

> [A] plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment. Jackson established no new test for determining the validity of guilty pleas. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See Boykin v. Alabama, 395 U.S. 238, 242 (1969); Machibroda v. United States, 368 U.S. 487, 493 (1962); Kercheval v. United States, 274 U.S. 220, 223 (1927). That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.

North Carolina v. Alford, 400 U.S. 25, 31 (1970). Therefore, in the context of a motion to withdraw a guilty plea, proof that a defendant has the natural fear of a life sentence certainly is not sufficient by itself to require that a trial court grant that motion.

Appellant also claimed he was "going crazy" and his "mind was gone" when he entered his pleas the second time. However, on two separate occasions the trial court heard his responses to the colloquy and determined that he was competent to enter a plea of guilty. Appellant also

admitted that he was not under the influence of alcohol or drugs when he entered his pleas. Nothing in the record, other than appellant's representations after he filed the second motion to withdraw his pleas, suggests appellant had any mental problem. The trial court, as finder of fact, did not find appellant's testimony on this point credible. As the evidence supports that finding, this Court cannot find that the trial court erred. Byers v. Commonwealth, 37 Va. App. 174, 179, 554 S.E.2d 714, 716 (2001).

Appellant also argues that if he had *any* alleged defense to the crimes, then Justus required that the trial court grant his motion to withdraw his pleas. He claims he had a defense of misidentification by the witnesses. Appellant misstates and wrongly interprets the case law.

Appellant did not have a viable or "reasonable" defense, one that would suggest that the ends of justice required giving him a trial, which was the requirement and holding in Justus. 274 Va. at 154, 645 S.E.2d at 289. The Supreme Court found that Justus's defenses, supported by affidavits and proffers to the trial court, were "not 'merely dilatory or formal.'" Id. at 155-56, 645 S.E.2d at 290. Here, on the other hand, appellant's allegation that he had a defense of misidentification was clearly "merely dilatory or formal." All of the witnesses knew appellant prior to the robbery, as they had all worked together at the Goodwill store. During the preliminary hearing, all five witnesses testified that they immediately recognized appellant as soon as they saw him in the store. The trial court heard this testimony *ore tenus* during the motion to suppress and found it to be "overwhelming" evidence against appellant.

Appellant argues that the court found he had a legitimate defense when it noted that he had "no more of a centilla [sic] of an argument of mistaken identity." However, such a defense is drastically different in form and function from the defenses presented in Justus, where the defendant presented affidavits to support her claims that she actually lived in the house that she allegedly burgled and that her former husband actually attacked her first so that her actions were

taken in self-defense.  Here, on the other hand, appellant did not even provide the court with any evidence to support his "mistaken identity" defense nor does the transcript of the suppression hearing suggest appellant had a "reasonable defense," as the trial court pointed out.

Appellant presented no affidavits, alibi witnesses, or even any explanation of his "mistaken identity" defense.  He simply claimed that he wanted a chance to prove that he was not guilty.  Therefore, he did not present a "reasonable basis for [a] substantive" defense, but instead presented a "'merely dilatory or formal' defense[] to the charges."  Id.

CONCLUSION

The trial court properly exercised its discretion when it denied appellant's second motion to withdraw his guilty pleas.  Thus, we affirm appellant's convictions and remand for correction of the sentencing order.

Affirmed and remanded.